Citation Nr: 1730420 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 13-16 772 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUES

1. Entitlement to an initial disability rating in excess of 20 percent for degenerative disc disease (DDD) of the lumbar spine with degenerative joint disease (DJD).

2. Entitlement to a total disability rating based upon individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Francis P. Kehoe, Attorney


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

J. Tunis, Associate Counsel


INTRODUCTION

The Veteran served on active duty service from November 1965 to November 1967.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from May 2010, September 2010, and May 2013 rating decisions of the Department of Veterans Affairs (VA) Regional Offices (RO) in New York, New York (May 2010 and May 2013 decisions), and Newington, Connecticut (September 2010 decision). Jurisdiction now lies with the RO in New York, New York.

In the May 2010 rating decision, the RO granted service connection for a back disability and assigned a 10 percent rating, effective November 20, 2009. The Veteran appealed the rating assigned. In the September 2010 rating decision, the RO denied entitlement to a TDIU. In the May 2013 rating decision, the RO increased the Veteran's rating for his back disability to 20 percent disabling, effective November 20, 2009. Although this was a partial grant of benefit sought, the Board notes that the Veteran has indicated continued disagreement with the rating assigned and the Veteran has not been granted the maximum benefit allowed; thus, the claim is still active. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

This matter was previously remanded in May 2015 for further development and adjudication. Pertaining to the issue of entitlement to an initial disability rating in excess of 20 percent for DDD of the lumbar spine with DJD, the Board finds that there has been substantial compliance with the remand directives. Therefore, the matter is now properly before the Board. See Stegall v. West, 11 Vet. App. 268, 270-71 (1998).

In May 2015 the Board also remanded the issue of entitlement to service-connection for a cervical spine disability. Subsequently, the RO granted the Veteran service connection, with an evaluation of 10 percent disabling. The Veteran has filed a notice of disagreement with this initial rating. The AOJ is currently adjudicating the Veteran's claim for an increased initial rating of his cervical spine disability; and therefore, the matter is not currently before the Board on appeal.

The Board notes that since the issuance of the December 2016 Supplemental Statement of the Case (SSOC) the Veteran has submitted additional evidence. Because the Veteran filed his appeal after February 2013, a waiver of such consideration is not necessary, and the Board may properly consider such evidence at this time. See 38 U.S.C.A. § 7105 (e) (West 2014).

The Board has reviewed the Veteran's records maintained in the Virtual VA paperless claims processing system and the Veterans Benefits Management System (VBMS).

In December 2013, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge (VLJ). A transcript of the videoconference hearing has been associated with the Veteran's electronic claims file.

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDING OF FACT

The lumbar spine disability has not been manifested by forward flexion limited to 30 degrees or less, favorable ankylosis of the entire thoracolumbar spine, or incapacitating episodes lasting a total duration of at least 4 weeks but less than 6 weeks during the last 12 months. 





CONCLUSION OF LAW

The criteria for an initial rating in excess of 20 percent for DDD of the lumbar spine with DJD are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.71a, Diagnostic Codes 5242, 5003 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. The Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating their claims for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). In this case, letters satisfying the notice requirements of 38 U.S.C.A. § 5103 (a) and 38 C.F.R. § 3.159(b)(1) were sent to the Veteran in November 2009 and August 2010. 

VA satisfied its duty to assist the Veteran in the development of his claim. First, VA satisfied its duty to seek, and assist in the procurement of, relevant records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Specifically, the information and evidence that have been associated with the claims file include the Veteran's service treatment records, VA treatment records, private treatment records, VA examination reports, and lay statements. The Veteran has notified VA that he is in receipt of Social Security Administration (SSA) disability benefits. Accordingly, VA requested the Veteran's SSA records, but VA has been notified that that "[a]fter exhaustive and comprehensive searches, [SSA was] not able to locate medical records. Further efforts will be futile." The Veteran has been notified of such in a subsequent Statement of the Case (SOC), and was notified of such missing SSA records at the December 2013 videoconference hearing. The Veteran was asked to provide any records in his possession, but the Veteran has not submitted any missing records. Any further attempts to obtain these records would be futile. 38 C.F.R. § 3.159 (c)(2) (2016). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman, 19 Vet. App. at 486; Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009).

VA satisfied its duty to provide the Veteran with an examination when required. See 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159 (c)(4), 3.326(a); McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). The Veteran underwent examinations for VA compensation purposes in April 2010, October 2012, August 2015, and December 2016. The April 2010, August 2015, and December 2016 VA examination reports note a review of the Veteran's claims file; however, the October 2012 VA examination report notes that the Veteran's electronic claims file was not available for review. Yet, the October 2012 VA examination report indicates that the prior VA examination was reviewed, and that the Veteran's history contained in the prior VA examination report was reviewed. All of the VA examination reports note an in-person examination and include a report of the Veteran's symptoms and asserted history. There is no evidence, nor has the Veteran asserted, a worsening in his condition since the last VA examination. Thus, considered together, the VA examination reports are found to be adequate for adjudication. 38 C.F.R. § 3.159 (c) (4); Barr v. Nicholson, 21 Vet. App. 303, 307 (2007).

Additionally, the Board also finds that, considered together, the examination reports include findings necessary for application of the rating criteria, to include a report of any functional impairments and range of motion measurements. The Court in Correia v. McDonald, No. 13-3238, 2016 WL 3591858 (Vet. App. July 5, 2016), held that the final sentence of 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. In this case, the December 2016 appropriately applied the requirements set-forth in Correia, and reported any functional impairments and range of motion measurements on both active and passive motion, in weight-bearing and nonweight-bearing. 

Last, the Board recognizes the Veteran's January 2016 argument that the August 2015 VA examination was not adequate because the VA examiner provided an opinion as to the etiology of the Veteran's back disability, which was outside of the scope of the prior appeal's instructions. However, the Board disagrees. The Board finds that although August 2015 VA examination includes an opinion that was not requested on appeal, the Board has not considered the stated opinion, and instead, the Board has considered the thorough and relevant report of functional impairment, symptomatology, and range of motion measurements. Thus, the Board finds the examinations of record to be adequate.

Therefore, as VA satisfied its duties to notify and assist the Veteran, the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. § 5103 (a), § 5103A, or 38 C.F.R. § 3.159.

II. Compliance with Stegall

As noted in the Introduction, the Board previously remanded this matter in May 2015. In relevant part, the Board's remand instructed the RO to: obtain any outstanding records, schedule the Veteran for a VA examination to assess the severity of his service-connected lumbar spine disability, and readjudicate the claims.

Accordingly, updated VA treatment records, private treatment records were added to the claims file. The Veteran underwent a VA examination of his spine in August 2015 and December 2016. The examiners noted a review of the Veteran's claims file, and interviewed and examined the Veteran in-person. As discussed above, the Board finds the VA examination reports to be thorough in that they include the necessary symptomatology and range of motion testing as set-forth in the rating criteria. The Veteran's claims were then readjudicated, and the Veteran was furnished an SSOC in December 2016.

Thus, the Board finds that there has been substantial compliance with its prior remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (a remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand instructions, and imposes upon the VA a concomitant duty to ensure compliance with the terms of the remand); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

III. Increased Rating

The Veteran seeks a disability evaluation in excess of 20 percent for DDD of the lumbar spine with DJD. A 20 percent evaluation was assigned under Diagnostic Code 5242, November 20, 2009. The Veteran asserts that an increased rating is warranted.

Disability evaluations are determined by the application of the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Any reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 38 C.F.R. § 4.25. However, the evaluation of the same "disability" or the same "manifestations" under various diagnoses is prohibited. 38 C.F.R. § 4.14.

The Court has held that a veteran may not be compensated twice for the same symptomatology as "such a result would over compensate the claimant for the actual impairment of his earning capacity." Brady v. Brown, 4 Vet. App. 203, 206 (1993). This would result in pyramiding, contrary to the provisions of 38 C.F.R. § 4.14. The Court has acknowledged, however, that when a veteran has separate and distinct manifestations attributable to the same injury, he should be compensated under different Diagnostic Codes. Esteban v. Brown, 6 Vet. App. 259 (1994); Fanning v. Brown, 4 Vet. App. 225 (1993).

A disability may require re-evaluation in accordance with changes in a veteran's condition. It is thus essential, in determining the level of current impairment, that the disability be considered in the context of the entire recorded history. 38 C.F.R. § 4.1. In evaluating any disability on the basis of limitation of motion, VA must consider the actual degree of functional impairment imposed by pain, incoordination, weakness, fatigue, and lack of endurance with repetitive motion. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995).

As of September 26, 2003, all diseases and injuries of the spine other than intervertebral disc syndrome are to be evaluated under the general rating formula. Intervertebral disc syndrome (preoperatively or postoperatively) is to be rated either under the general rating formula or under the formula for rating intervertebral disc syndrome (IVDS) based on incapacitating episodes, whichever method results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25. 68 Fed. Reg. 51,443 (Aug. 27, 2003) (codified at 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243).

The General Rating Formula provides a 20 percent evaluation where forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent evaluation is provided for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Diagnostic Codes 5235-5243.

Alternatively, incapacitating episodes of IVDS having a total duration of at least 4 weeks but less than 6 weeks during the last 12 months or at least 6 weeks the last 12 months is evaluated as 40 and 60 percent, respectively.

For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, entire thoracolumbar spine, or entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 68 Fed. Reg. 51,443, Note (5) (Aug. 27, 2003). Associated objective neurological abnormalities, including but not limited to bowel or bladder impairment, are to be evaluated separately under an appropriate Diagnostic Code. 68 Fed. Reg. 51,443, Note (1) (Aug. 27, 2003).

Having carefully reviewed the evidence of record, the Board finds that the preponderance of the evidence is against the assignment of an evaluation in excess of 20 percent for the entire period on appeal.

An August 2008 private treatment record from B. J. D., D.O., reports "bilateral lumbar tenderness associated with spasm causing a positive straight leg raise bilaterally to 30 degrees. There is hyporeflexia of the knee jerks and ankle jerks. There is a distal 4-extremity sensory loss. [. . . ]. The patient cannot walk on his toes and heels nor tandem gait." Additionally, a November 2009 private treatment record noted arthritic etiology suspected.

A January 2010 private treatment record from by S. F., M.D., indicates desiccatory changes at all of the visualized lumbar intervertebral discs, with a mild disc bulge at L5-S1. The record further notes no focal herniation, minimal osteophyte formation identified at L5-S1, and no other bulges or herniations. No evidence of spondylolisthesis was reported.

The Veteran was afforded a VA examination in April 2010. The Veteran reported mid-lower back pain which has gotten worse since 1966, with the pain radiating down both legs, and the pain at 5 out of 10 at rest and 7 to 10 if he sits for more than 20 minutes. The Veteran reported only being able to stand about 10 minutes, with the pain being 8 out of 10. The examination report indicates that the Veteran ambulates up to one block and uses a single-axis cane, and that he can drive but only limited distances. The Veteran further reported morning stiffness, spasms of the lower extremities, numbness and paresthesias of both legs, and a feeling of foot weakness; but denied fatigue, weakness, bowel or bladder problems, and incapacitating episodes of back pain over the last 12 months. The examination report notes that the Veteran is unsteady, with a history of falling several times. "Again, there is no history of any hospitalization or surgery for the spine, either cervical spine or lumbar spine. No history of neoplasm." Upon physical examination, objective findings include, "moderate kyphosis with a lack of lordosis." Thoracolumbar spine pelvic levels were equal, but some paraspinal tenderness in the lumbar spine area was noted. Forward flexion measured 0 to 80 with pain at the end of the range, extension measured 0 to 25 with pain at the end of the range, left and right flexion measured 0 to 25 with no pain, bilateral lower extremity straight leg raising measured positive at 60 with spasms that included tightness of both hamstring muscles and visible spasms and contractions of the hamstrings and quadriceps. Manual muscle test of both upper extremities measured 4+ out of 5, and both lower extremities measured 5 out of 5. The examiner noted increased pain upon repetitive range of motion testing of the lumbar spine, but found there to be no change in range of motion "lack of endurance or fatigability."

The Veteran was afforded an additional VA examination in October 2012. The VA examiner reported a diagnosis of lumbosacral spine DDD at L5-S1 with DJD. The Veteran reported pain increasing in the lower lumbar region, with pain upon driving, and the pain measuring 10-11 out of 10. The Veteran reported sharp pain that lasts 30 minutes. The Veteran denied extremity radicular symptoms, but noted spasms even while sitting or lying down. The Veteran further reported flare-ups that last from 40 minutes to an hour. Range of motion testing was conducted with the following results: forward flexion ending at 70 degrees, and painful motion beginning at 65 degrees; extension ending at 20 degrees, and painful motion beginning at 15 degrees; right lateral flexion ending at 20 degrees, and painful motion beginning at 15 degrees; left lateral flexion ending at 25 degrees, and no objective evidence of painful motion; right lateral rotation ending at 20 degrees, and painful motion beginning at 20 degrees; and left lateral rotation ending at 15 degrees, and painful motion beginning at 15 degrees. The Veteran was unable to perform repetitive-use testing with 3 repetitions due to pain. The examiner reported additional limitation in range of motion of the back following repetitive-use testing, and functional loss and/or functional impairment of the back, to include: less movement than normal, excess fatigability, pain on movement, deformity, disturbance of locomotion, tenderness to palpation lower area over spinous processes, left convex scoliosis, guarding or muscle spasms of the back with abnormal spinal contour (such as scoliosis, reversed lordosis, or abnormal kyphosis). Constant use of a cane is noted. The examiner noted no other neurologic abnormalities or findings related to a thoracolumbar spine condition. The examination report further indicates IVDS of the thoracolumbar spine with incapacitating episodes lasting at least 2 weeks but less than 4 weeks over the past 12 months due to IVDS. The examiner reported "observed forward flex to approx. [sic] 85 degrees from seated position to untie and tie shoes."

The Veteran was afforded a VA examination in August 2015. The examiner noted an in-person examination as well as a review of the claims file, and noted a diagnosis of mild arthrosis of the lumbar spine. The Veteran did not report flare-us, and the examiner noted no functional loss or functional impairment of the thoracolumbar spine. Range of motion testing produced the following results: forward flexion 0 to 75 degrees, extension 0 to 20 degrees, right lateral flexion 0 to 25 degrees, left lateral flexion 0 to 20 degrees, right lateral rotation 0 to 25 degrees, and left lateral rotation 0 to 20 degrees. There was no pain with weight-bearing, no objective evidence of localized tenderness or pain on palpation of the joints or associated soft tissue, and repetitive use testing was conducted, with no additional loss of function or range of motion after such repetitions. The examination report indicates that the Veteran was examined immediately after repetitive use over time, with no pain, weakness, fatigability, or incoordination significantly limiting the functional ability with repeated use over time. No guarding or muscle spasms were reported. The Veteran was reported to have normal strength, normal reflexes, but absent sensation to light touch on his bilateral feet/toes-with a notation that the Veteran has a diagnosis of peripheral neuropathy and receives treatment for such with medication. The examiner noted no radiculopathy, no IVDS, no ankylosis, and no other neurologic abnormalities or findings related to a thoracolumbar spine condition.

Last, the Veteran was afforded a VA examination in December 2016. The Veteran reported low back pain 9 out of 10 with constant pain. The examination report indicates no flare-ups, but does note functional loss or functional impairment of the back, with the Veteran reporting that he avoids prolonged sitting and standing. Range of motion testing results were "[a]bnormal or outside of normal range," measuring as follows: forward flexion 0 to 65 degrees, extension 0 to 20 degrees, right lateral flexion 0 to 20 degrees, left lateral flexion 0 to 20 degrees, right lateral rotation 0 to 25 degrees, and left lateral rotation 0 to 25 degrees. The examiner reported that the abnormal range of motion does not contribute to a functional loss, but did indicate that the pain noted upon examination causes functional loss. Pain was exhibited during forward flexion, extension, right lateral flexion, left lateral flexion, right lateral rotation, and left lateral rotation, with pain experienced upon weight-bearing. Pain was reported on passive range of motion testing and upon nonweight-bearing. There was no objective evidence of localized tenderness or pain on palpation of the joints or associated soft tissue of the back. Repetitive use testing with at least three repetitions were able to be performed, with no additional loss of function or range of motion after three repetitions; however, the Veteran was not examined immediately after repetitive use over time. The examiner reported that the Veteran was not having a flare-up that day, therefore, the examiner stated that it would be speculative to report additional range of motion loss and whether pain, weakness, fatigability, or incoordination could significantly limit functional ability during flare-ups, or when the joint is used repeatedly over a period of time. No guarding or muscle spasms were reported, but the examiner did note disturbance of locomotion, with a stiff wide based gait and use of a cane. No radiculopathy, ankylosis, or neurologic abnormalities related to the back condition were present. No IVDS and episodes requiring bedrest were reported. 

Given the medical evidence of record, the Board finds that during the entire period on appeal the Veteran's lumbar spine disability has not been more nearly manifested by forward flexion limited to 30 degrees or less, or favorable ankylosis of the entire lumbar spine, or incapacitating episodes of IVDS having a total duration of at least 4 weeks but less than 6 weeks during the last 12 months or at least 6 weeks the last 12 months. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Diagnostic Codes 5235-5243.

The Veteran is competent to report that his disability is worse than presently evaluated. In this regard, the Board accepts that the pain and limited range of motion. See DeLuca, supra; see Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). However, neither the lay nor medical evidence reflects the functional equivalent of impairment required for a higher evaluation. The more probative evidence consists of that prepared by trained medical professionals, and such evidence demonstrates that the currently assigned evaluation is appropriate for the pain with forward flexion measuring between 65 and 80 degrees, which contemplates interference with activities as reported by the Veteran. See DeLuca, supra. In order to warrant a higher evaluation, there must be the functional equivalent of forward flexion limited to 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine. Pain alone does not constitute functional loss under VA regulations. Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

The Board has considered whether a higher disability evaluation is available under any other potentially applicable provision of the rating schedule. However, a higher evaluation is not warranted based on any other provision. In this regard, it is noted that a higher evaluation of 40 percent is not warranted for the Veteran's IVDS under the schedular criteria, as the record shows no incapacitating episodes of IVDS having a total duration of at least 4 weeks during the last 12 months.

Also, a separate evaluation is not warranted as there are no "separate and distinct manifestations" attributable to the lumbar spine disability. See Esteban v. Brown, 6 Vet. App. 259 (1994); Fanning v. Brown, 4 Vet. App. 225 (1993). The Board has considered the Veteran's report of neurological impairment of the bilateral lower extremities, in that the Veteran has reported numbness and paresthesias of both legs, and a feeling of foot weakness. See December 2013 videoconference hearing; see also April 2010 VA examination. Upon physical examination in October 2012, the VA examiner reported decreased sensation to light touch in the bilateral lower extremities and absent reflexes in the bilateral ankles, and the August 2015 VA examination also noted decreased sensation to light touch in the bilateral lower extremities. Similarly, upon VA examination in December 2016, the examiner noted hypoactive reflexes in the bilateral extremities, and decreased sensations to light touch of the bilateral lower extremities. However, the Veteran's reported neurological impairment of the bilateral lower extremities have not been attributed to his service-connected lumbar spine disability. Instead, the October 2012, August 2015, and April 2016 VA examination reports specifically indicate that the Veteran does not have radicular pain or any other signs or symptoms due to radiculopathy. The October 2012, August 2015, and April 2016 VA examination reports also concluded that the Veteran does not have any other neurological abnormalities or findings related to the thoracolumbar spine condition. The Board notes that the October 2012 and august 2015 VA examination reports, in addition to the private medical treatment records associated with the claims file, indicate a diagnosis of diabetic peripheral neuropathy of the upper and lower extremities. 

Therefore, although the Board has considered the Veteran's asserted symptoms, the Board finds that the medical evidence of record to be of significant probative value. The probative medical evidence of record does not indicate radiculopathy associated with the Veteran's lumbar spine disability, and does not indicate any other neurological abnormalities or findings related to the thoracolumbar spine condition. The Veteran is not competent here because he lacks the requisite medical expertise and because a medical opinion may not be rendered based on lay observation, unlike a broken leg. See Jandreau v. Nicholson, 492 F.3d. 1372 (2007); Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). Thus, this evidence is more probative than the Veteran's uncorroborated opinion as it was prepared by skilled, neutral medical professionals after examining the Veteran and review of the claims file. 

Last, the Board has also considered whether Diagnostic Code 5003 might serve as a basis for an increased rating. Diagnostic Code 5003 provides that degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a, Diagnostic Code 5003 (degenerative arthritis). However, when there is some limitation of motion of the specific joint or joints involved that is noncompensable (0 percent) under the appropriate diagnostic codes, Diagnostic Code 5003 provides a rating of 10 percent for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added, under Diagnostic Code 5003. A rating of 20 percent requires X-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a.

The Veteran has a current diagnosis of DDD and DJD of his lumbar spine, as confirmed by X-ray imaging. However, the Veteran's lumbar spine disability is already rated at 20 percent disabling. Therefore, no additional higher or alternative ratings under Diagnostic Code 5003 can be applied.

Accordingly, the weight of evidence is against the claim for increase. Also, there is no basis to stage the rating as the evidence shows no distinct period where the disability exhibited symptoms that would warrant a different rating. See Hart v. Mansfield, 21 Vet. App. 505 (2007) (staged ratings are appropriate when the factual findings show distinct period where the service-connected disability exhibits symptoms that would warrant different ratings); see also Fenderson v. West, 12 Vet. App. 119, 126 (2001).

IV. Extraschedular Considerations

The Board further finds that referral for extraschedular consideration is not warranted. Referral for an extraschedular rating requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom., Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating adequately contemplates the Veteran's disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as governing norms. If the Veteran's disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of Compensation Service to determine whether an extraschedular rating is warranted.

The discussion above reflects that the symptoms of the Veteran's lumbar spine disorder are fully contemplated by the applicable rating criteria. With respect to the musculoskeletal disorders, the rating criteria encompass not only range of motion, but also other factors as set out in 38 C.F.R. §§ 4.40, 4.45 and 4.59. The rating schedule specifically contemplates factors such as weakened movement, excess fatigability, pain on movement, disturbance of locomotion, and interference with sitting, standing and weight-bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. In summary, the schedular criteria for musculoskeletal disabilities contemplate a wide variety of manifestations of functional loss.

Given the variety of ways in which the rating schedule contemplates functional loss for musculoskeletal disabilities, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture. In short, there is nothing exceptional or unusual about the Veteran's left and right foot disabilities, as the rating criteria reasonably describe his disability level and symptomatology. Thun, 22 Vet. App. at 115. Therefore, referral for extraschedular consideration is not warranted in this case. 38 C.F.R. § 3.321 (b)(1).

Finally, under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, the Veteran has not alleged that his currently service-connected disabilities combine to result in additional disability or symptomatology that is not already contemplated by the rating criteria for each individual disability. Further, there is no medical evidence indicating that the Veteran's service-connected lumbar spine and cervical spine disabilities combine or interact either in such a way as to result in further disabilities, functional impairment, or additional symptomatology not accounted for by the rating criteria applicable to each disability individually. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.


ORDER

Entitlement to an initial disability rating in excess of 20 percent for DDD of the lumbar spine with DJD is denied.


REMAND

A total disability rating may be assigned where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disability; provided that, in pertinent part, if there is only one such disability, the disability shall be rated at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability rated 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341(a), 4.16(a) (2016). 

However, where these percentage requirements are not met, entitlement to benefits on an extraschedular basis may be considered when the Veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities, and consideration is given to the Veteran's background including his or her employment and educational history. 38 C.F.R. §4.16 (b). The Board does not have the authority to assign an extra-schedular total disability rating for compensation purposes based on individual unemployability in the first instance. Bowling v. Principi, 15 Vet. App. 1 (2001). Instead, where a veteran does not meet the schedular requirements, the Board may only refer the claim to the Chief Benefits Director or Director, Compensation and Pension Service, for extraschedular consideration. Id. In determining whether unemployability exists, consideration may be given to the Veteran's level of education, special training, and previous work experience, but it may not be given to his or her age or to any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

In this case, the Veteran is service connected for DDD of the lumbosacral spine with DJD, rated as 20 percent disabling, and spondylosis, arthrosis, and DDD of the cervical spine, currently rated as 10 percent disabling. The Veteran's current combined evaluation is 30 percent. Therefore, the Veteran does not meet the percentage requirements required under the schedular criteria for a TDIU. 

At the December 2013 videoconference hearing, the Veteran testified that he is unable to go to work and that he had to quit his regular profession as a result of his service-connected disabilities. The Veteran explained that he applied to work at UPS, but that he could not do the job because of his back pain. The Veteran further explained that he worked with his father as a business representative for racetracks, stadiums, and shops, but that he had to quit due to him being unable to drive. The Veteran testified that he was driving 400 miles a week and due to his back he could not do it anymore. The Veteran testified that he also tried bartending, and tried selling insurance, but explained that both jobs did not work out as a result of his back pain.

The Veteran indicates that he is receiving SSA benefits as a result of his health conditions, to include his service-connected disabilities. The Veteran testified before the undersigned VLJ that he appeared before or received a written decision by a judge at SSA. However, as noted above, although VA previously requested the Veteran's SSA records, VA has been notified that "[a]fter exhaustive and comprehensive searches, [SSA was] not able to locate medical records. Further efforts will be futile." 

VA examination reports of record indicate functional impairment and unemployability. The April 2010 VA examination report states that the Veteran ambulates up to one block and uses a single-axis cane, and that he can drive but limited in distance. The October 2012 VA examination report indicates that the Veteran's previous job required him to drive to check on accounts and clients, and that he had to stop working about 10 years ago as a result of his back pain. Last, the December 2016 VA examiner found that the Veteran's thoracolumbar and cervical spine conditions impact his ability to work in that he must change position from sitting to standing as needed. 

Thus, after considering the record in its entirety, to include a consideration of the Veteran's background including his employment and educational history. 38 C.F.R. §4.16(b) the Board remands this matter for referral to the Chief Benefits Director or Director, Compensation and Pension Service for consideration on an extraschedular basis.

Accordingly, the case is REMANDED for the following action:

1. Refer the Veteran's claim to Director, Compensation Service for consideration of entitlement to a TDIU on an extraschedular basis. In accordance with 38 C.F.R. § 4.16 (b), the AOJ must include a full statement as to the Veteran's service-connected disabilities, employment history, educational and vocational attainment, and all other factors bearing on the issue.

2. Once the issue on appeal has returned from the Director, Compensation Service, readjudicate the claim. If the benefit sought remains denied, provide the Veteran and his representative with a supplemental statement of the case, and return the case to the Board.







The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs